```
                                              o
      IN THE UNITED STATES DISTRICT COURT        United States District Court
       FOR THE SOUTHERN DISTRICT OF TEXAS        Southern District of Texas
                   LAREDO DIVISION                        FILED

                                                       NOV 30 2009

MICHAEL ADELMAN, et al,         §                    CLERK OF COURT
                                §                    LAREDO DIVISION
                  Plaintiffs,   §
                                §
VS.                             §        CIVIL ACTION NO. L-08-6
                                §
                                §
MICHAEL PETER, et al,           §
                                §
                                §
                  Defendants.   §
```

MEMORANDUM AND ORDER

The parties in this case dispute their respective ownership interests in an adult bookstore and the real property, in Laredo, Texas, on which the bookstore is located. Pending is Plaintiffs' motion to compel production of redacted portions of documents prepared by an on-site monitor whom Defendants hired to observe Plaintiffs' management of the bookstore. Defendants assert that the monitor's communications are protected by attorney-client privilege.

I. BACKGROUND

The parties developed the bookstore and purchased the location through two entities: Axiom Entertainment Corporation (Axiom), and Dynamic Publishing and Distribution L.L.C (Dynamic). (Dkt. 62-41, Land Purchase Contract Addendum, Jan. 17, 2001; Dkt. 83, Trans. Aug. 3, 2009 Hrg., 30:22-31:1.) Defendants Michael Peter and Joseph Annecca claim that the

parties agreed to own Axiom and Dynamic equally; Plaintiffs Michael Adelman and Joseph Crump maintain that Defendants were merely creditors with an option to buy a half interest that they never exercised. Plaintiff Adelman, who currently runs the business, has since transferred the bookstore and the property to new entities. (Trans. Aug. 3, 2009 Hrg., 31:22-32:2.)

In December, 2006, Adelman brought a suit in the District of New Jersey for a declaration of the parties' interests in Axiom and Dynamic. (Dkt. 1-1, Compl. 8.) In February, 2007, Defendants filed their own suit in a Texas state court, seeking a declaration of interests and relief under several causes of action. On February 7, 2007, Defendants' agents took control of the business under a preliminary injunction from the state court. (See Dkt. 61-9, State Ct. Docket. 2; Dkt. 61-10, State Ct. Docs. 15; Dkt. Nos. 77-2, 86-3, 87-5, Peter Dep. 200:1-4, Sept. 11-13, 2009.) However, the parties promptly negotiated a return of the business to Adelman under an agreement given effect in a February 16, 2007, Consent Order, signed by Judge Robert B. Kugler, entered in the federal case in New Jersey. (Dkt. 78-2, Consent Order 4.) The Consent Order required Defendants to return the business to Adelman's control, barred Defendants from proceeding in the Texas litigation, and required Defendants to cause the state court's injunctions to be vacated

and the state action to be stayed. (Id. at 1, 3, 4.)[1] The Consent Order required Adelman to refrain from distributing the business's assets and future income for any purpose other than regular operating expenses (Id. at 2-4), and included a monitoring provision that "Defendants may designate up to (3) monitors to be present one-at-a-time only at the parties' business location . . . but only for the purpose of monitoring the activities and finances of the business property . . . ." (Id. at 2.) Defendants were to pay for the monitors, and whatever information they collected was to be used "for the purposes of this litigation only." (Id. at 2-3.) Defendants appointed Melvin "Buck" Hill and David Carter, who monitored the business until sometime in late 2006, when Defendants ended the monitoring due to the expense.

The parties deposed the principals in September, 2009. During the depositions, Defendants' counsel produced redacted copies of the documents at issue: handwritten reports that Carter prepared while monitoring the business and a typed letter, dated March 15, 2007, addressed to Jose Becerra, who was Defendants' counsel in 2006. (Pl. 3rd Mt. Cmpl. ¶4; Dkt. 78, Def. Resp. to 3rd Mt. Cmpl. ¶5; Dkt. 77-3, Redacted Carter

---

[1] The Court has since lifted the provision of the Consent Order requiring Defendants to cause the state court action to be stayed. (Dkt. 48, Order of Aug. 25, 2008.) However, the Court has been informed that the state court declines to proceed while this action is pending. (Trans. Aug. 3, 2009 Hrg., 9:9-10:14.)

Reports.) Except for the letter, all of the reports at issue were apparently sent to Defendant Peter. (Redacted Carter Reports.) Carter may have also sent copies of his reports to Becerra during the brief time Defendants controlled the business. (Dkt. Nos. 77-2, 86-3, 87-5, Peter Dep. 200:1-4.) However, the reports at issue here were sent after that period, in March and October, 2007. (Redacted Carter Reports.) Defendants assert attorney-client privilege over the redacted portions of the documents. (Def. Resp. to 3rd Mt. Cmpl. ¶4, 7.) The Court has extended the deadline for Carter's deposition, pending review of the unredacted documents.

Carter was first hired by Defendants when they took over the business in February, 2007. (Dkt. 87-3, Annecca Dep. 111:12-112:22, Sept. 12, 2009; Dkt. 87, Def. Br. re. Pl. 3rd Mt. Cmpl. ¶4.) After Defendants returned the business to Adelman's control, Carter's employment continued as one of Defendants' monitors. (Def. Resp. to 3rd Mt. Cmpl. ¶3; Annecca Dep. 113:4-13.) Defendants paid for his services throughout. (Peter Dep. 200:1-4; 8-11.)

II. DISCUSSION

A. Plaintiffs' Motion to Compel

A.1. Attorney-Client Privilege

The parties agree that Texas law governs the assertion of privilege in this diversity case. See FED. R. EVID. 501. Texas Rule of Evidence 503(b) provides these elements for attorney-client privilege: (1) the communication was confidential; (2) the communication was made for the purpose of facilitating the rendition of professional legal services; (3) the communication was between or among privileged parties, that is, the client, lawyer, and their representatives; and (4) that the privilege has not been waived. Huie v. DeShazo, 922 S.W.2d 920, 922-23 (Tex. 1996). The privilege protects both "the giving of professional advice [and] the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). However, the mere fact that an attorney authored or received a communication does not suffice to make it privileged. See Huie, 922 S.W.2d at 923. There is not necessarily privilege, for instance, where an attorney was employed for a client solely in some non-legal capacity, such as accountant, business advisor, or investigator, because the investigation and reporting of purely factual matters are not services done in "furtherance of the rendition of professional legal services" under Texas Rule 503. In re

Texas Farmers Insurance Exchange, 990 S.W.2d 337, 340-41 & 340 n.2 (Tex.App.—Texarkana 1999); Navigant Consulting, Inc., v. Wilkinson, 220 F.R.D. 467, 475 (N.D. Tex. 2004). However, if the document contains privileged advice, opinion, or analysis, then the privilege extends to the entire document, including purely factual statements. In re ExxonMobil Corp., 97 S.W.3d 353, 357 (Tex.App.—Houston [14 Dist.] 2003); see also Huie, 922 S.W.2d at 923.

The purpose of the privilege is to allow unrestrained communication between attorney and client concerning "matters in which the attorney's professional advice or services are sought." Huie, 922 S.W.2d at 922. The privilege extends to certain confidential communications made or received by a client's employee, if the employee qualifies as a "representative of the client." Tex. R. Evid. 503(b)(1)(D); In re Monsanto Co., 998 S.W.2d 917, 929-30 (Tex.App.—Waco 1999). There are three requirements for an employee's communication to be from a "representative of the client": the communication must be made "for the purpose of effectuating legal representation for the client"; it must be "confidential"; and it must be made by a person acting "within the scope of employment for the client." Tex. R. Evid. 503(a)(2)(B). The Texas Rule is intended to extend the privilege only where 'the employee makes the communication at the direction of his superiors . . . and where

the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.'" In re E.I. DuPont de Nemours and Co., 136 S.W.3d 218, 225 n.3 (Tex. 2004) (quoting National Tank Co. v. Brotherton, 851 S.W.2d 193, 198 (Tex. 1993)).

### A.2. Carter's Reports

The Court has reviewed the unredacted copies of Carter's handwritten reports and the typed letter addressed to Becerra. The nine redactions range in length from a few words to almost a page. Because the redactions are not numbered, and the redacted documents are not paginated, the Court for this Memorandum has numbered the redactions in the order in which they appear in the documents produced to Plaintiffs. (See Appendix) The redactions fall into four categories:

> (A) Redactions 1 and 2 concern Carter's own mental impressions about the lawsuit and then-counsel Becerra's efforts on Defendants' behalf.
>
> (B) Redactions 3, 4, 5, 6, 7, and most of redaction 8, concern payment for Carter's monitoring services.
>
> (C) A small part (four lines) of redaction 8 appears to concern a conversation between Carter and Becerra regarding legal issues in the case. Two lines in redaction 9 may concern a conversation between Carter and one of the Defendants regarding legal issues in the case.
>
> (D) Most of Redaction 9 concerns interpersonal matters among Carter and the Defendants.

Some of the redacted material is obviously not privileged.

### A.3. Carter's Status as Defendants' Employee

Contrary to Plaintiffs' suggestion at the prior hearing, Carter was not an independent court-appointed monitor. The Consent Order did not name Carter and Hill, and Defendants did not need a court order to hire them to monitor the bookstore. The Consent Order merely required Plaintiffs to give access to whomever Defendants designated. The facts that the Consent Order allowed Defendants to choose the monitors, required Defendants to pay for them, and permitted Defendants to discontinue their activities, indicate that their services were for Defendants' benefit. Carter was, therefore, Defendants' employee.

### 3.a. *the scope of Carter's employment*

Carter was hired to observe the activities and finances of the business. He was not hired to evaluate the significance of the events he observed, except insofar as he was expected to distinguish disbursements that depleted the value of the business and were not normal operating expenditures. He would then presumably be prepared to testify about his observations, if called to do so.

*3.b. Confidentiality and furtherance of the rendition of legal services*

Having reviewed the redacted material *in camera*, the Court finds that the redacted material fails to meet one or more of the prerequisites for a privileged communication from a representative of a client.

> (A) Redactions 1 and 2: text concerning Carter's own mental impressions about the lawsuit and Becerra's efforts on Defendants' behalf

Carter was not hired to advise Defendants on their litigation strategy or to evaluate the quality of the services Defendants were receiving from their counsel. Thus, reporting his views on these matters was not within the scope of Carter's employment, and the redacted material on these topics is not privileged.

> (B) Redactions 3, 4, 5, 6, 7, and most of redaction 8: text concerning payment for Carter's monitoring services

Fees and conditions of employment are not confidential matters protected by attorney-client privilege. C.f. Borden, Inc. v. Valdez, 773 S.W.2d 718, 720 (Tex.App.—Corpus Christi, 1989) ("nonconfidential matters" such as the terms and conditions of an attorney's employment and the purpose of the representation are not privileged). Accordingly the redacted material on these topics is not privileged. Furthermore, the services for which Carter was being paid were not in the

furtherance of the rendition of professional legal services. Even in the shadow of impending litigation, purely factual investigations or judgments on business matters are not privileged, even in cases where lawyers are hired to make them. See In re Texas Farmers, 990 S.W.2d at 341; Navigant Consulting, Inc. v. Wilkinson, 220 F.R.D. 467, 476 (N.D. Tex. 2004) (no privilege under Texas law where lawyers were hired to interview employees suspected of stealing trade secrets in order assess their credibility and convey the seriousness of their actions). Investigative reports prepared by attorneys can be privileged, but only where the reason the attorney was hired was to provide *both* fact-finding services *and* legal advice regarding how the client should proceed. See, e.g. In re Baptist Hospitals of Southeast Texas, 172 S.W. 3d 136, 143 (Tex.App.—Beaumont 2005); Harlandale Independent School Dist. v. Cornyn, 25 S.W.3d 328, 334-35, 335 n.13 (Tex.App.—Austin, 2000).

> (C) The remainders of redaction 8 & 9: text concerning a conversation between Carter and Becerra regarding legal issues in the case & text that may concern a conversation between Carter and one of the Defendants regarding legal issues in the case.

It is unclear whether this material may concern the legal advice from Becerra or one of the Defendants, or simply Carter's own thoughts about the case. However, assuming that it reflects the former, the material is nonetheless not privileged. Carter was not a "representative of the client" when receiving

communications from Becerra or Defendants about their legal strategy, because assisting with such matters was outside of the scope of his employment as a monitor.

<u>Category (D): Carter's personal attitude toward one of the Defendants  (most of redaction 9).</u>

This redacted text has nothing to do with Carter's observations of the business or the provision of legal services to Defendants.  Instead it relates some dissatisfaction by Carter with actions by one of the Defendants.  It is not privileged.  It is difficult to see how this material could be relevant to the parties' dispute, but, given the breadth of discovery allowed under Rule 26, the Court finds that this material is discoverable.

### III. CONCLUSION

The Court GRANTS Plaintiff's motion to compel.  (Dkt. 77.) Defendants are ORDERED to produce unredacted versions of the handwritten reports and typed letter Defendants' counsel produced at Defendants' depositions.

DONE at Laredo, TX, this 30th day of November, 2009.

George P. Kazen
Senior United States District Judge